FILED

2019 JUN 24 PM 1: 35

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GRACE CLAY and STEPHEN CLAY,
Individually, and on behalf of their minor
son, S.C.,

    Plaintiffs,

v.

IH4 PROPERTY FLORIDA, L.P. and
INVITATION HOMES REALTY, LLC,

    Defendants.

CASE NO: 2:19-CV-423-FtM-99UAM

**COMPLAINT AND JURY DEMAND**

## Introduction

1.     Plaintiffs were residents of a rental property that was owned and/or controlled by Defendants. Plaintiffs bring the within action to obtain their lawful remedies against Defendants for violations of the applicable lease, Chapter 83, Florida Statutes, negligence and discriminatory practices under the Fair Housing Act.

2.     Defendants have illegally allowed dangerous toxic mold to exist at Plaintiffs' rental property, which essentially dispossessed them of their home, and caused personal injuries. Defendants have unlawfully discriminated against Plaintiff, S.C., who has a chronic medical condition that substantially affects his major life functions, by failing to take reasonable actions to remediate such mold, and to provide Plaintiff with alternative housing until the mold was properly remediated. Defendants have breached their obligations under the applicable lease, Florida and Federal law by failing to properly maintain residential property that is the subject of the above-referenced lease.

1

3. Plaintiffs seek damages for humiliation, embarrassment, emotional and physical distress, loss of housing, property damage, lost earnings, pain and suffering, and personal injuries they have suffered as a result of Defendants' actions.

### Parties

4. Plaintiff, GRACE CLAY ("GRACE") is a resident of Lee County, Florida.

5. Plaintiff, STEPHEN CLAY, is a resident of Lee County, Florida.

6. GRACE and STEPHEN are the mother and father of a minor child, S.C., who resides with his parents in Lee County, Florida.

7. Defendant, IH4 PROPERTY FLORIDA, L.P. ("IH4") is a limited partnership organized under the laws of the State of Florida, that has a principal place of business located at 1717 Main Street, Suite 2000, Dallas, Texas, 75201. Its general partner is IH4 PROPERTY LEVEL GP, LLC, which is a citizen of the State of New York. Upon information and belief, its limited partners are citizens of the state of Texas. At all times material to this complaint, IH4 was registered to do business, and owned real property in the State of Florida.

8. Defendant, INVITATION HOMES REALTY, LLC ("INVITATION"), is a limited liability corporation organized under the laws of the State of Delaware that has a principal place of business at 1717 Main Street, Suite 200, Dallas, Texas 75201. Upon information and belief, its members are citizens of the state of Texas. At all times material to this complaint, INVITATION was registered to do business in the State of Florida.

### Jurisdiction and Venue

9. This court has jurisdiction of this cause pursuant to 28 U.S.C. §§1331, 1332, 1343 and 1367.

10. Jurisdiction is proper based on the diversity of parties in accordance with 28 U.S.C. §1332 on the grounds that the parties are from different states and the amount in controversy exceeds $75,000.

11. Jurisdiction is proper under 28 U.S.C. §1331 on the grounds that the controversy between the parties arises under the laws of the United States.

12. Jurisdiction is proper over the claims arising under Florida in accordance with 28 U.S.C. §1367 on the grounds that the state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy as to the claims over which the court has original jurisdiction.

13. Venue is proper in the United States District Court, Middle District of Florida on the grounds that, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the district and the property that is the subject of the instant action is located within the district.

## ALLEGATIONS COMMON TO ALL COUNTS

14. It is widely recognized that certain molds when occurring indoors release chemical compounds known as mycotoxins, which elicit a harmful effect on human beings. Mycotoxins affect occupants of buildings primarily through inhalation of the mold spores. *Mycotoxins and Indoor Molds*, Sean P. Abbott, M.D. Indoor Environment CONNECTIONS, Vol. 3 Issue 4 2002.

15. The Florida Department of Health, the Environmental Protection Agency, the Centers for Disease Control and other governmental organizations grave health problems that may result from toxic mold exposure.

16. S.C. has a chronic condition which substantially affects his major life functions. S.C. has severe asthma.

17. When exposed to certain types of molds and other environmental pollutants, S.C. can suffer a severe and debilitating reaction much more severe than that which would be experienced by the average person. The symptoms of his mental and physical impairment include, but are not limited to:

    a. Difficulty breathing.

    b. Wheezing

    c. Constricted airways

    d. Asthma

18. In and around August 2016, Plaintiffs entered into a lease with IH4 concerning a single family residence known as 2201 NW 1st Street, Cape Coral, Florida (the "Home"). The Home is owned by IH4. At all times material to this complaint, and upon information and belief, INVITATION operated as IH4's property manager in relation to the Home.

19. In the fall of 2017, Plaintiffs entered into a new lease (the "Lease") for a one year period beginning in August 1, 2017.

20. On or about September 9, 2017, Hurricane Irma impacted Southwest Florida and specifically, the Home. As a result, the Home suffered damage to the roof and other structural elements, and an intrusion of water and/or moisture.

21 In the aftermath of Hurricane Irma, using a work order process established by Defendants, Plaintiffs requested that Defendants repair and/or remedy damage to the Property caused by the hurricane. Specifically, the work identified damage to the roof, water in the interior of the Home and mold.

22. The initial work order was pending for over two months without any response by Defendants, notwithstanding the fact that Defendants' representatives inspected the Home in September 2017 - shortly after the work order was submitted.

23. Over the next few months, the mold growth continued and was exacerbated by subsequent storm events. During this time, Plaintiffs were told by Defendants that they were awaiting "approval" for the required repairs and remediation. However, no such repairs or remediation were attempted or completed.

24. On December 29, 2017, as a result of toxic mold present at the Property, S.C. fell ill, suffering from PICU Acute Severe Asthma Exacerbation. S.C. was admitted to Golisano Children's Hospital on that date, and remained there for three (3) days.

25. Shortly after S.C. was admitted to the hospital, Grace reached out to Defendants' representatives and disclosed S.C.'s injuries and demanded that they take immediate action to remedy the unsafe conditions at the Property. Defendants took no action on her request.

26. At various times over the next 6-8 months, S.C. and Grace were required to live elsewhere when the mold growth caused flare ups in S.C.'s asthma. Despite multiple inspections by Defendants, and multiple requests by the Clay family to address the conditions at the Home, no action was taken. During this time, notwithstanding the fact that they were unable to peaceably enjoy the Home, Plaintiffs continued in good faith to pay their rent while genuinely believing that help was just around the corner.

27. Ultimately, in December 2018, after more than 14 months of inaction by Defendants, and with no other options available to them, Plaintiffs were forced to notify Defendants that they were withholding the rent until such time as leaks in the roof and other areas of the Home were fixed and the mold remediated.

28. In January 2019, Defendants made an attempt to make repairs on the Home, which was an attempted modest repair to the roof. Such repair was ineffective, and did not pass final inspection by Lee County Building Department.

29. Around the same time as the roof Defendants made a half-hearted attempt to remediate the moisture in the Home by using unqualified personnel. Defendants failed to conduct the remediation in accordance with industry standards, including, but not limited to, standards S500 and S520 of the standards promulgated by the Institute of Inspection Cleaning and Restoration Certification. As a result, the remediation was unsuccessful and ineffective.

30. At an analysis conducted after the preceding remediation attempt showed the existence of Stachybotrys, a type of toxic mold inside the Home.

31. Ultimately, because of the Defendants' inaction, the Clay family was forced to vacate the Home to avoid further injury.

32. Defendants have unfairly discriminated against S.C. in the sale or rental of his dwelling by failing to make reasonable accommodations for his disability, specifically, his severe asthma, where such accommodations are necessary to afford him full enjoyment of the property.

33. As a result of the preceding conduct on the part of Defendants, Plaintiff has suffered damages that include, but are not limited to:

    a. Personal injuries;

    b. Property damage;

    c. Loss of income;

    d. Emotional distress

    e. Pain, suffering and loss of enjoyment of life;

## COUNT I – VIOLATIONS OF FAIR HOUSING ACT 42 U.S.C. §3601 et seq.
### (BY S.C. AGAINST IH4 AND INVITATION)

34. Plaintiffs repeat and reallege paragraphs 1 through 33 of the complaint as if set forth fully herein.

35. S.C. has a mental or physical impairment that substantially limits one or more of his major life activities, to wit: severe asthma that when exposed to toxic mold manifests intense reactions that negatively impact his ability to breathe, and engage in other important life activities. S.C.'s disability is long term and/or permanent.

36. As set forth in paragraphs 1 through 33 of the complaint, IH4 and INVITATION violated the Federal Fair Housing Act by refusing to make reasonable accommodation in rules, policies or services, when such accommodations are necessary to afford Plaintiff equal opportunity to use and enjoy the Property.

37. As set forth in paragraphs 1 through 33 of the complaint, IH4 and INVITATION have committed a discriminatory housing practice as defined in 42 U.S.C. §§3602 and 3617 by discriminating against S.C. in the rental of the Home.

38. IH4 and INVITATION's committed the aforementioned discriminatory housing practices intentionally, maliciously, and with callous and reckless disregard of Plaintiffs' federally protected rights.

39. As a result of IH4 and INVITATION's discriminatory housing practices, S.C. has suffered damages, including but not limited to, personal injuries, pain and suffering, emotional distress and loss of his residence.

## COUNT II - VIOLATION OF FLORIDA FAIR HOUSING ACT
### (BY S.C. AGAINST IH4 and INVITATION)

40. Plaintiffs repeat and reallege paragraphs 1 through 33 of the complaint as if set forth fully herein.

41. Pursuant to Section 760.23(2), Florida Statutes:

"It is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, handicap, familial status, or religion."

42. Further, pursuant to Section 760.23(7), Florida Statutes:

"It is unlawful to discriminate in the sale or rental of, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of:
(a) That buyer or renter;
(b) A person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
(c) Any person associated with the buyer or renter."

43. In violation of Section 760.23, Florida Statutes, IH4 and INVITATION unlawfully discriminated against S.C. by failing to make a reasonable accommodation for his handicap.

44. IH4 and INVITATION's conduct in failing to take reasonable measures to protect S.C. from the mold was an act of discrimination based on Plaintiff's handicap.

45. As a result of IH4 and INVITATION's violation of Section 760.23, Florida Statutes, S.C. has suffered damages, including but not limited to, personal injuries, pain and suffering, emotional distress and loss of his residence.

## COUNT III- BREACH OF LANDLORD'S DUTIES UNDER THE FLORIDA LANDLORD-TENANT ACT
### (ALL PLAINTIFFS AGAINST IH4)

46. Plaintiffs repeat and reallege paragraphs 1 through 33 of the complaint as if set forth herein.

8

47. IH4 as owner/lessor of the property is landlords as defined in Section 83.43, Florida Statutes.

48. Pursuant to section 83.51, Florida Statutes:

> (1) The landlord at all times during the tenancy shall:
>
> > (a) Comply with the requirements of applicable building, housing, and health codes; or
> >
> > (b) Where there are no applicable building, housing, or health codes, maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition. The landlord, at commencement of the tenancy, must ensure that screens are installed in a reasonable condition. Thereafter, the landlord must repair damage to screens once annually, when necessary, until termination of the rental agreement.

49. Chapter 386, Florida Statutes prohibits sanitary nuisances, which are defined as:

> "the commission of any act, by an individual, municipality, organization, or corporation, or the keeping, maintaining, propagation, existence, or permission of anything, by an individual, municipality, organization, or corporation, by which the health or life of an individual, or the health or lives of individuals, may be threatened or impaired, or by which or through which, directly or indirectly, disease may be caused."

50. Pursuant to Section 22-231 of the Lee County Code of Ordinances, all components of a dwelling unit must be maintained in good condition, so as to prevent deterioration, including mold growth.

51. IH4 failed to maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair.

52. The conditions in the property at the time Plaintiffs occupied it constitute a sanitary nuisance in violation of Chapter 386, Florida Statutes.

53. The conditions in the property were caused by the failure of IH4 to maintain it in good condition so as to prevent deterioration and/or mold growth.

54. IH4 had actual or constructive notice of the unsafe condition of the property, yet failed to take reasonable measures to remedy it.

55. As a result of IH4's breach of Section 83.51, Florida Statutes, Plaintiffs have suffered damages, including, but not limited to, personal injuries, pain and suffering, emotional distress, loss of income, damage to property, and diminution of the rental value of the Home.

## COUNT IV- BREACH OF LEASE
### (ALL PLAINTIFFS AGAINST IH4)

56. Plaintiffs repeat and reallege paragraphs 1 through 33 of the complaint as if set forth fully herein.

57. Pursuant to the lease, a true and correct copy of which is attached to the complaint as Exhibit A, IH4 agreed to:

    a. Maintain fixtures, furniture, hot water, heating and A/C equipment; and

    b. Substantially comply with applicable federal, state and local laws regarding safety, sanitation and fair housing; and

    c. Make all reasonable repairs.

58. IH4 violated the terms of the Lease by failing to maintain fixtures, furniture, hot water, heating and A/C equipment in the property, failing to substantially comply with applicable federal, state and local laws regarding safety, sanitation and fair housing; and failing to make reasonable repairs to the property.

59. As a result of IH4's breach of the Lease, Plaintiffs have suffered damages, including, but not limited to, personal injuries, pain and suffering, emotional distress, loss of income, damage to property, and diminution of the rental value of the Home

## COUNT V – NEGLIGENCE
### (ALL PLAINTIFFS AGAINST IH4 and INVITATION)

60. Plaintiffs repeat and reallege paragraphs 1 through 33 of the complaint as if set forth fully herein.

61. IH4 and INVITATION, as the owners and/or possessors of the Home, had a duty to act with reasonable care to protect the health and safety of Plaintiffs.

62. IH4 and INVITATION as the owners and/or possessors of the Home had a duty to maintain the property in a reasonably safe condition.

63. IH4 and INVITATION breached their legal duties to Plaintiffs by failing to provide reasonably safe premises free of mold, and failing to undertake reasonable measures to remove the mold once it was advised of the presence of the mold.

64. As a result of the IH4 and INVITATIONS's negligence, Plaintiffs have been damaged.

### Demand for Relief

**WHEREFORE, under all foregoing counts, Plaintiffs demand the following relief:**

1. Judgment in favor of Plaintiffs and against Defendants on all counts of the complaint;

2. Award compensatory, statutory and punitive damages to Plaintiffs and against Defendants;

3. Reasonable attorney's fees, costs; interest and

4. Such other relief as the court deems just and appropriate.

### Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

Dated this 20th day of June, 2019.

Respectfully submitted,

By: */s/ Christopher DeCosta*
**CHRISTOPHER J. DECOSTA, ESQ.**
**FLORIDA BAR NUMBER 271410**
MAHSHIE & DECOSTA, P.A.
1560 Matthew Drive, Suite E
Fort Myers FL 33907
Telephone: (239) 931-7566
Facsimile: (239) 931-7560
Primary Email: Eservice@md-lawfirm.com
　　　　　　　Chris@md-lwfirm.com
Secondary Email: Jamie@hmdlegal.com
　　　　　　　　Iris@md-lawfirm.com
　　　　　　　　Chantal@md-lawfirm.com

## CERTIFICATE OF SERVICE

I, CHRISTOPHER J. DECOSTA, HEREBY CERTIFY that on this 20th day of June, 2019, I filed the foregoing with the Clerk of the Court by U.S. Mail.

By: */s/ Christopher DeCosta*