UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GRACE CLAY and STEPHEN CLAY,
individually, and on behalf
of their minor son, S.C.,

    Plaintiffs,

v.                            Case No: 2:19-cv-423-FtM-99NPM

IH4 PROPERTY FLORIDA, L.P.
and INVITATION HOMES REALTY,
LLC,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motion to Dismiss Counts I and II of plaintiffs' Amended Complaint (Doc. #13) filed on July 26, 2019. Plaintiffs filed a Response in Opposition (Doc. #16) on August 9, 2019. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.**

This is a landlord tenant dispute stemming from water damage and mold growth caused by Hurricane Irma that resulted in exacerbation of S.C.'s asthma. Plaintiffs are currently proceeding on a five-count Amended Complaint (Doc. #11), but only the fair housing claims (the federal Act and its Florida counterpart) are at issue here.

The Amended Complaint alleges the following: In August 2016, plaintiffs entered into a lease with IH4 Property Florida, L.P. for a single-family residence in Cape Coral, Florida. (Doc. #11, ¶ 19.) Invitation Homes Realty, LLC operated as IH4's property manager for the home. (Id.) In 2017, plaintiffs Grace and Stephen Clay, entered a new lease with IH4 for a one-year period, beginning on August 1, 2017. (Id., ¶ 20.) Grace and Stephen are the parents of a minor child, S.C., who lives with his parents at the Cape Coral home. (Id., ¶¶ 4-5.) S.C. suffers from asthma.

In September 2017, Hurricane Irma impacted the home, resulting in damage to the roof and an intrusion of water and moisture into the home. (Doc. #11, ¶ 21.) In the aftermath of Hurricane Irma, using a work order process established by defendants, plaintiffs requested that defendants repair and/or remedy damage to the home. Specifically, the work order identified damage to the roof, water in the interior of the home, and mold. (Id., ¶ 22.) The initial work order was pending for over two months without any response by defendants, notwithstanding the fact that defendants' representatives inspected the home in September 2017 – shortly after the work order was submitted. (Id., ¶ 23.)

Over the next few months, the mold growth continued and was exacerbated by subsequent storm events. (Doc. #11, ¶ 24.) During this time, plaintiffs were told by defendants that they were

awaiting "approval" for the required repairs and remediation. (Id.) However, no such repairs or remediation were attempted or completed. (Id.)

On December 29, 2017, as a result of the toxic mold present at the home, S.C. fell ill, suffering from "PICU Acute Severe Asthma Exacerbation." (Doc. #11, ¶ 25.) S.C. was admitted to the hospital and remained there for three days. (Id.) Shortly thereafter, Grace reached out to defendants' representatives and disclosed S.C.'s severe asthma and demanded that they take immediate action to remedy the unsafe conditions at the home or provide alternative housing. (Id., ¶ 26.) Defendants took no action. (Id.)

At various times over the next 6-8 months, S.C. and Grace were required to live elsewhere when the mold growth would cause flare ups to S.C.'s asthma. (Doc. #11, ¶ 27.) Despite multiple inspections by defendants, and multiple requests by the Clay family to address the conditions at the home, no action was taken. During this time, notwithstanding the fact that plaintiffs were unable to peacefully enjoy their home, plaintiffs continued in good faith to pay their rent. (Id.)

Ultimately, in December 2018 – more than 14 months after Hurricane Irma – with no other options available to them, plaintiffs were forced to notify defendants that they were withholding rent until such time as leaks in the roof and other

areas of the home were fixed and the mold remediated. (Doc. #11, ¶ 28.) In January 2019, defendants tried to make a modest repair of the roof, but it was ineffective and did not pass final inspection by the Lee County Building Department. (Id., ¶ 29.) Around this same time, defendants attempted to remediate the moisture and/or mold in the home by using unqualified personnel but failed to conduct the remediation in accordance with industry standards. (Id., ¶ 30.) After the attempted remediation an analysis showed the presence of Stachybotrys, a type of toxic mold inside the home. (Id., ¶ 31.) Ultimately, because of the defendants' inaction, the Clay family was forced to vacate the home to avoid further injury. (Id., ¶ 32.)

Plaintiffs allege that defendants have unfairly discriminated against them in the rental of the home by failing to make reasonable accommodations for S.C.'s disability, specifically, his severe asthma, where such accommodations are necessary to afford him full enjoyment of the property. Plaintiffs alleged damages include personal injuries, property damage, loss of income, emotional distress, and pain and suffering. (Doc. #11, ¶ 34.)

Defendant move to dismiss plaintiff's Federal Fair Housing Act (FHA) (Count I) and Florida Housing Rights Act (FFHA) (Count II) claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants also

move to dismiss the FFHA claim, Fla. Stat. § 760.23(9)(b), for failure to exhaust administrative remedies.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

**A. Failure to State a Claim (Counts I, II)**

"The Florida Housing Rights Act contains statutory provisions that are substantively identical to the Federal Fair Housing Act." Loren v. Sasser, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002). Therefore, the Court will consider the motion to dismiss these claims under Rule 12(6)(6) in tandem as the same legal analysis applies to each. See id. at 1302.

The FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling because of that person's handicap.[1]

---

[1] The Eleventh Circuit treats the terms "handicap" and "disability" interchangeably and elects to use the term "disability." See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1285 n.2 (11th Cir. 2014).

42 U.S.C. § 3604(f)(2).  Discrimination includes refusing to make reasonable accommodation in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.  42 U.S.C. § 3604(f)(3)(B).

To state a failure to accommodate claim under the FHA, a plaintiff must allege facts which show that: "(1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation."  Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1285 (11th Cir. 2014).  An individual is disabled, for the purposes of the FHA, if the person has (1) a physical or mental impairment which substantially limits one or more of such person's major life activities[2], (2) a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 3602(h)(1)-(3).

---

[2] While the FHA does not define "major life activities" the term is defined in the Americans with Disabilities Act (ADA) as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2 (as amended by 76 F.R. 16978-01); see also McManus v. Cherry, 1:08-cv-0010, 2010 WL 5638108, *4 (N.D. Fla. Nov. 19, 2010) (noting congressional intent that provisions of FHA related to disability be read similarly to provisions in ADA).

**1. Disability Allegations**

Defendants first argue that plaintiffs only cursorily describe S.C.'s purported disability in a conclusory manner, and have not provided any non-conclusory allegations that defendants knew or should have known of S.C.'s disability. However, the Court finds plaintiffs' allegations sufficient. Plaintiffs allege that "S.C. has a mental or physical impairment that substantially limits one or more of his major life activities, to wit: severe asthma that when exposed to toxic mold manifests intense reactions that negatively impact his ability to breathe, and engage in other important life activities. S.C.'s disability is long term and/or permanent." (Doc. #11, ¶ 36.) Plaintiffs further allege that they informed defendants of his disability shortly after S.C.'s December 29, 2017 hospitalization, but defendants failed to act. (Id., ¶ 26.) These allegations are sufficient.

**2. Reasonable Accommodation**

Defendants next argue that mold remediation is not a "reasonable accommodation" as defined by the FHA and cite several non-binding district court opinions for this proposition. (Doc. #13, pp. 7-8.) In doing so, defendants state that accommodations contemplated by the FHA are only those that address problems caused by a person's disability, and not those that a landlord would already be required to perform for a non-disabled resident, such as mold remediation.

The FHA's reasonable accommodation provision requires only those accommodations that "may be necessary ... to afford equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

> In this context, 'equal opportunity' can only mean that handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps*. If accommodations go beyond addressing these needs and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling, a preference that the plain language of this statute cannot support.
>
> . . .
>
> Thus, waiving an ordinance that applies to both handicapped and non-handicapped people may be 'necessary' to afford the handicapped an 'equal opportunity' if the waiver addresses a need created by the handicap.

Schwarz v. City of Treasure Island, 544 F.3d 1201, 1226 (11th Cir. 2008) (emphasis in original).

Here, plaintiffs have plausibly alleged that if S.C. is exposed to mold, he has severe reactions beyond that which the average person would experience, including difficulty breathing, wheezing, and constricted airways. Thus, the consequences to S.C. of mold exposure require greater care than the average tenant who does not suffer from asthma. Additionally, remediation of mold by a landlord is not specifically required in Florida's Landlord Tenant Act, which requires that the landlord generally maintain

the rental unit in good repair.  Fla. Stat. § 83.51(1)(b).  The Amended Complaint sufficiently alleges lack of a reasonable accommodation.

Therefore, the Motion to Dismiss Counts I and II for failure to state a claim is denied.

### B. Failure to Exhaust (Florida Fair Housing Act claim – Count II

Defendants additionally argue that plaintiffs have failed allege that they complied with the statutory conciliation process set forth at Fla. Stat. § 760.34 prior to filing suit; therefore, this Court lacks subject matter jurisdiction over the FFHA claim.

The pertinent portions of the FFHA are found in section 736.34 of the Act, titled "Enforcement."  They read as follows:

> (1) Any person who claims to have been injured by a discriminatory housing practice or who believes that he or she will be injured by a discriminatory housing practice that is about to occur may file a complaint with the commission.... Within 100 days after receiving a complaint, or within 100 days after the expiration of any period of reference under subsection (3), the commission shall investigate the complaint and give notice in writing to the person aggrieved whether it intends to resolve it. If the commission decides to resolve the complaint, it shall proceed to try to eliminate or correct the alleged discriminatory housing practice by informal methods of conference, conciliation, and persuasion.
>
> ...
>
> (4) If, within 180 days after a complaint is filed with the commission or within 180 days after expiration of any period of reference under subsection (3),[4] the commission has been unable to obtain voluntary compliance with ss. 760.20–760.37, the person aggrieved

may commence a civil action in any appropriate court against the respondent named in the complaint or petition for an administrative determination pursuant to s. 760.35 to enforce the rights granted or protected by ss. 760.20–760.37.

Fla. Stat. § 760.34(1), (4). Only the Florida Commission on Human Relations and "[a]ny local agency certified as substantially equivalent" are exempt from complying with the exhaustion requirement. Fla. Stat. § 760.34(7)(a), (8).

Despite the statute's use of "may," Florida appellate courts have held that this administrative exhaustion is required before a case may be filed in court. Belletete v. Halford, 886 So. 2d 308 (Fla 4th DCA 2004)(trial court lacked subject matter jurisdiction to hear FFHA claim because plaintiff had not participated in the statutory conciliation process in Fla. Stat. § 760.34); Housing Opportunities Project v. SPV Realty, LC, 212 So. 3d 419 (Fla. 3d DCA 2016)(same). Although federal district courts have disagreed[3], State, Department of Legal Affairs, Office of Attorney General v. Leisure Village, Inc. of Stuart, 166 So. 3d 838 (Fla. 4th DCA 2015), reh'g denied (July 6, 2015), noted:

> With this decision, three panels of one district court of appeal in this state, comprising a total of nine separate judges, and now two on this court, have concluded that administrative exhaustion is a pre-condition to filing a civil action under the Florida Fair Housing Act. If it could ever be said, as Judge

---

[3] Floyd v. City of Sanibel, 2:15-cv-795-SPC-CM, 2017 WL 786638, *3-4 (M.D. Fla. Jan. 9, 2017), Milsap v. Cornerstone Residential Mgmt., Inc., No. 05-60033-CIV, 2010 WL 427436 (S.D. Fla. Feb. 1, 2010) (J. Marra).

Marra once concluded, that Belletete is an "anomaly" that could be ignored, Milsap, 2010 WL 427436 at *4, that is no longer the case.

Id.

"In the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions of Florida's intermediate appellate courts." State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004). Plaintiffs cite no case overruling these intermediate appellate decisions, and the Court is unable to find any contrary precedent from the Florida Supreme Court. Because the Court cannot disregard binding, on-point decisions of the intermediate Florida appellate courts, it grants the Motion to Dismiss Count II. The administrative process required by Florida courts is at least a condition precedent to filing a judicial action, defendants have asserted their right to that claim processing rule, and there is no allegation or record evidence that such a process was followed. Therefore, the Court finds that plaintiffs' FFHA claim fails to state a claim upon which relief may be granted because there is no allegation that plaintiffs have participated in the statutory conciliation process set forth at Fla. Stat. § 760.34.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants' Motion to Dismiss Counts I and II of plaintiffs' Amended Complaint (Doc. #13) is **GRANTED IN PART AND DENIED IN PART.**

The Motion is denied as to Count I and granted as to Count II. Count II is dismissed without prejudice.

**DONE and ORDERED** at Fort Myers, Florida, this __20th__ day of September, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record